ibitIN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO:

ADRIANELLY LARUE, on behalf of herself
and all others similarly situated,

     Plaintiff,

v.

TAWKIFY, INC., A Foreign Profit Corporation
and KELLIE AMMERMAN, Individually,

     Defendants.

_____/

## COLLECTIVE ACTION COMPLAINT

Plaintiff brings this action, individually and on behalf of a class of similarly situated individuals against TAWKIFY, INC. ("Defendant" or "Tawkify") and KELLIE AMMERMAN ("Defendant" or "Ammerman") (collectively, "Defendants" or "Tawkify"). Plaintiff's allegations against Defendants are based upon an investigation carried out by Plaintiff's Counsel, except for allegations pertaining specifically to Plaintiff, which are based upon Plaintiff's personal knowledge.

### I.     SUMMARY

Congress designed the Fair Labor Standards Act of 1938 ("FLSA") to remedy situations "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To achieve this broad remedial purpose, the FLSA establishes minimum wage and overtime requirements for covered employees. 29 U.S.C. §§ 206, 207. These provisions, coupled with an effective integrated cause of action within the FLSA, prevent employers from pilfering the wages rightfully earned by their employees. *See, Billingsley v. Citi Trends, Inc.*, 13-12561, 2014 WL 1199501 (11th Cir. Mar. 25, 2014).

### II.     NATURE OF THE CASE

1.     Tawkify, Inc. is a successful online matching company, that for years, exploited its

"matchmakers" or "coaches" (hereinafter, matchmakers)by misclassifying them as "independent contractors" rather than as employees.  These matchmaker employees, part of the Tawkify network, work solely under Tawkify's direction to match their clients with dates. In exchange for their completed work for each client, Tawkify pays them a very small commission.

2.      Tawkify matchmakers are required to sell expensive dating packages for Tawkify-which is the main responsibility of matchmakers.

3.      These matchmakers are not engaged in "independent" businesses as salespeople.

4.      Tawkify exerts significant control over matchmakers in their limited, but important role.  To protect their brand, image and legal interests, Tawkify requires matchmakers to comply with their series of rules and regulations, which are laid out in a 45-page General Policies handbook which states:

> "The following General Policy Statement is meant as a guideline for Matchmakers to use their best practices in delivering the Tawkify service to their clients. It is not intended to be a comprehensive step-by-step guide to being a successful matchmaker. That instruction may be found in the Rise platform, Payroll FAQ's, and Matchmaker Community Outreach events. This Policy Statement's primary purpose is to establish the boundaries and procedures upon which Tawkify bases its decisions regarding the performance of a matchmaker. *As clients submit feedback Tawkify has an obligation to investigate claims. Tawkify Policies are offered as guidelines to provide an excellent client experience from these learnings."*

5.      Plaintiff, Adrianelly Larue,("Plaintiff" or "Larue") was misclassified as an independent contractor but was required to work in accordance with Tawkify's instructions and parameters, and in return, Plaintiff was paid virtually nothing while incurring unreimbursed personal costs to perform work on Tawkify's behalf.

6.       Defendants required and/or permitted Plaintiff to work as a matchmaker in excess of forty (40) hours per week but refused to pay her at the applicable minimum wage and overtime rate.  In fact, Defendants refused to compensate all matchmakers for the hours they worked.

7.      The U.S. Department of Labor ("DOL") recognizes that "A worker is entitled to minimum wage and overtime pay protections under the Fair Labor Standards Act (FLSA) when there is an employment relationship between the worker and an employer and there is coverage under the FLSA." Additionally, "Misclassification deprives workers of their federal labor protections, including their right to be paid their full, legally earned wages."

8.      Defendants' conduct violates the FLSA, which requires non-exempt employees, such as Plaintiffs, to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

9.      Furthermore, Defendants' practice of failing to pay employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision.

10.     Plaintiff brings a collective action to recover the unpaid wages owed to her and all other similarly situated employees, current and former, of Defendants who worked for Tawkify at any time during the three-year period before this Complaint was filed up to the present as a matchmaker and misclassified as an independent contractor("Class Members").  These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

11.     Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former  "matchmaker"  employees of the  Defendants,  pursuant to Fed.R.Civ.P.23, that they are entitled to back wages from Defendants for hours/weeks of work for which they did not receive at least the Federal minimum wage.

## II.     SUBJECT MATTER JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

14.     This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

15.     This Court has jurisdiction over the Florida Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiff's FLSA claims are the same acts and omissions that give rise to Plaintiff's Florida Minimum Wage Claims.

16.     The venue is proper in the Southern District of Florida because the events forming the basis of this suit occurred in this District and Plaintiff worked in this District.

17.     This Court has personal jurisdiction over Defendants because they are Registered with the Florida Department of Corporations to conduct business within Florida, and they continue to conduct business within the State of Florida.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## III.     PARTIES AND PERSONAL JURISDICTION

19.     Plaintiff was an adult resident of Broward County, Florida.

20.     At all times material hereto, Plaintiff was employed by Defendants as a "Matchmaker" and misclassified as an independent contractor from approximately November 2019 through January 2023.

21.     Plaintiff was offered the same position, but as an employee not an independent contractor starting in February 2023.

22.     Plaintiff has executed her Consent to Become Party Plaintiff form. *See* attached as Exhibit A.

23.     The Class Members are all the Defendants' current and former Matchmakers, who worked for Defendants at any time during the three years prior to the filing of this Complaint up to the present and were misclassified as independent contractors.

24.     Defendant Tawkify, Inc., is an entity incorporated in the State of Delaware, with its corporate office located in San Francisco, California.  Tawkify, Inc. is a foreign-profit corporation doing business for the purpose of accumulating monetary Profit.

25.     Defendant Kellie Ammerman is an individual residing in California. Additionally, this Court has personal jurisdiction over this Defendant because she is the President and CEO of Tawkify, Inc.

## IV.     COLLECTIVE AND CLASS ALLEGATIONS

### A.     FLSA Class Members

26.     Named Plaintiff has actual knowledge that FLSA Class Members have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiff worked with other matchmakers who worked at Tawkify.

27.     As such, Plaintiff has first-hand personal knowledge of the same pay violations for other matchmakers. Furthermore, other matchmakers have shared with Plaintiff similar pay

violation experiences including not being paid any wage and tip confiscations, as those described in this complaint.

28.    Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as Matchmakers at any time during the three years prior to the commencement of this action to present.

29.    FLSA Class Members perform or have performed the same or similar work as Plaintiff.

30.    FLSA Class Members are not exempt from receiving pay at the federally mandated minimum wage rate under the FLSA.

31.    As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors, and/or the denial of minimum wage.

32.    Defendants' failure to pay for hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

33.    The experiences of Plaintiff, with respect to her pay, are typical of the experiences of the FLSA Class Members.

34.    The specific job titles or precise job responsibilities of each FLSA Class Member do not prevent collective treatment.

35.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

36.    Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula.  The claims of all FLSA Class Members arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

37.    As such, Plaintiff brings her FLSA minimum wage claims as a collective action on behalf of the following class:

> **Defendants' current and former Matchmakers (or any other job title) who worked for Tawkify at any time during the three years prior to the filing of this Complaint up to the present.**

(Plaintiff reserves the right to amend this definition as necessary).

5

## V.     FLSA COVERAGE

38.     In an FLSA case, the following elements must be met. "(1) [plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [plaintiff] minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dept.*, *Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

**EMPLOYMENT RELATIONSHIP**

39.     To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *Id.* at 942 (citing 29 U.S.C. § 203(g)). "To determine if an individual is an employee, 'we look at the economic reality of all the circumstances' surrounding the activity." *Id.* (citing *Brouwer,* 139 F.3d at 819). "We refer to this test as the 'economic reality' test." *Id.* (citing *Villarreal v. Woodham,* 113 F.3d 202, 205 (11th Cir.1997)). "The touchstone of the economic reality test is the alleged employee's economic dependence on the employer." *Id.*

40.     Tawkify denies having an employer-employee relationship with its matchmakers. Tawkify employs "independent contractors" to mislead matchmakers about the working conditions and to justify not paying matchmakers any wages. Once a matchmaker begins employment with Defendants, the realities of the working relationship between Tawkify and matchmakers is that of an employer-employee relationship.

41.     Defendants controlled Plaintiff's work schedule. Defendants have an attendance and punctuality policy that requires matchmakers to follow.  For example, matchmakers must be available at least one (1) hour before a scheduled date, on call during a date, and at least two (2) hours after the date[1].

42.     Defendants utilize a central management team to monitor and control matchmakers

---

[1] "Matchmakers are responsible for updating their calendar to accurately represent availability. Once a meeting has been scheduled it should only be rescheduled in extenuating circumstances (e.g. deaths, personal and family emergencies, etc.) Matchmakers must keep their Calendly open for scheduling at a reasonable availability." Tawkify does recognize that unexpected life events do occur. In these events, 24 hours' notice must be given to the client and scheduling team at matchmakingconcierge@tawkify.com. Matchmakers who do not include reasons for meeting cancellations or do not show will receive a warning followed by increasing enforcement for repeated occurrences. This could lead to termination of contract. Tawkify General Policies 2021 handbook, page 11.

nationwide.

43.     Defendants utilize a central management team to monitor and control matchmakers nationwide.

44.     Defendants ensure all matchmakers, no matter which city or state they are in, follow their common policies, procedures, and practices as matchmakers.

45.     Upon information and belief, Defendants' Operations Managers are responsible for working with a team of other corporate employees, to oversee all nationwide matchmakers according to Tawkify's systems and procedures.

46.     Defendants require matchmakers to sign a Consulting Agreement.

47.     Defendants' Agreement states the relationship between Defendants and matchmakers is one in which they are "consultants."

48.     Defendants' Agreement states that matchmakers are responsible for The Services include, but are not limited to: "screening and finding matches for clients of Consultant in their clients' best interests within the designated timeframe; setting appropriate expectations with clients for potential matches; planning and scheduling dates and following through to ensure dates occur to meet client's expectations; obtaining constructive feedback from both clients and their matches to achieve the benefits of the Tawkify platform; and collaborating with other matchmakers to effectively help clients find their counterparts.   Consultant represents that Consultant is duly licensed (as applicable) and has the qualifications, the experience, and the ability to properly perform the Services.

49.     Defendants' agreement with matchmakers agrees to pay a "fee" on the "dashboard."

50.     Plaintiff and other matchmakers receive a "commission" based pay structure, no matter how many hours worked per workweek.

51.     Defendants provide training and a certificate if needed, through an online Matchmaker Certification Program platform called "Thinkific" program that taught the matchmakers what they needed to know in order to work at Tawkify.  The matchmakers are not paid for any training whatsoever. *See* Matchmaker Commissions and Rewards attached as Exhibit B.

52.     Defendants also give matchmakers a "recruitment link" to recruit potential dates for Tawkify. *See* attached as Exhibit C.

53.     Defendants' Operations and Compliance department sends out "guidance via

Matchmaker policies, scheduling Q & A's on specific topics, discussing what to say and how to say it to Defendants clients. *See* email attached as Exhibit D.

54.     Additionally, Tawkify Operations has procedures and policies to be followed by all Tawkify Matchmakers across the country and Canada.  *See* New Tawkify Policies 2020, attached as Exhibit E.

55.     Tawkify's website informs potential clients that they can expect to be paired with the matchmaker best fit for their values, personality and relationship goals. We then discuss relationship history and preferences to understand the kind of partnership and person they're hoping to find (and keep). The search begins by pooling the best "on-paper" matches within our Romance Rolodex, the country's largest private network of 1MM+ relationship-seekers. All candidates are then personally screened in-or- out through video interviews to assess compatibility by asking the important questions first.

56.     This same menu of services is available across the United States and offers the same satisfaction guarantee for its clients nationwide.

57.     Tawkify offers potential clients nationwide a menu of à la carte services.

58.     Defendants do not pay matchmakers any amount as a direct wage.

59.     Defendants did not issue matchmakers W-2s.

60.     Defendants issue matchmakers 1099s.

61.     Defendants have not and are not claiming the matchmakers are subject to 7(i) retail exemption.

62.     Defendants have not and are not claiming matchmakers fall within the executive exemption under the FLSA.

63.     Defendants have not and are not claiming matchmakers fall within the administrative exemption.

64.     But despite their important role, Tawkify has NEVER properly classified its matchmakers as employees.  Rather, Tawkify would offer people the purported "opportunity" to develop their own business earning commission by selling dating packages and recruiting clients, designating them as "independent contractors."

65.     However, these matchmakers are not independent contractors under applicable law. It has reaped enormous profits by deliberately avoiding paying wages and benefits to those performing the work that forms the backbone of Tawkify's business.

66.     The intended result is for matchmakers to receive at most, de minimis profit from all their work, while basically providing free labor.

67.     At all material times, Defendants have been employers within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

68.     Moreover, the Fair Labor Standards Act ("FLSA") defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee." 29 U.S.C. § 203(d).

69.     The statutory definition of "employer" includes corporate officers, participating shareholders, supervisors, managers, or other employees where those individual exercises some supervisory authority over employees and is responsible in whole or in part for the alleged violation. *See id.; Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993); *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 971-72 (5th Cir. 1984).

70.     Companies like Tawkify were never supposed to be allowed to run an entire business on the backs of independent contractors.  People who work in a company's core line of business are its "employees." *United States v. Silk*, 331 U.S. 704, 718 (1947).

71.     But the Matchmakers, who make up the bulk of Tawkify's workforce, are denied even the most basic protections of federal and state labor laws. Tawkify does not pay them minimum wage; it does not pay overtime; and it does not reimburse business expenses, such as internet connections, laptops, or smartphones.

72.     Its classification of its matchmakers also deprives them of basic protections against discrimination and sexual harassment.

73.     By design, "independent contractors" are exempted from nearly every labor law, but this classification is not meant to be a loophole for companies like Tawkify.

74.     Historically, firms reserved the independent contractor designation for entrepreneurial individuals whose skills demanded higher pay in the open market."[2]  With this in mind, "[l]egislatures rationalized excluding [independent contractors] from most employment laws because these individuals did not require the same legal protections as potentially more vulnerable, less-skilled 'employees.'"[3]

75.     Defendant Kellie Ammerman is the President and CEO of Tawkify, Inc.

---

[2] Keith Cunningham-Parmeter, *From Amazon to Uber: Defining Employment in the Modern Economy*, 96 B.U. L. Rev. 1673, 1683–84 (2016).
[3] *Id.*

76.     Defendant Kellie Ammerman is involved in the day-to-day business operation of Tawkify.

77.     Defendant Kellie Ammerman has responsibility for the supervision of the matchmakers at Tawkify.

78.     Defendant Kellie Ammerman is responsible for the compensation or lack thereof paid to matchmakers at Tawkify.

79.     Defendant Kellie Ammerman has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.

80.     Additionally, Defendant Kellie Ammerman was/is responsible for the day-to-day affairs of Tawkify, Inc.  In particular, she is/was responsible for determining whether Tawkify complied with the Fair Labor Standards Act.

81.     As such, Defendant Kellie Ammerman is the employer of the Plaintiff and Class Members within the meaning of 3(d) of the FLSA, and is jointly, severally, and liable for all damages.

## ENTERPRISE AND INDIVIDUAL COVERAGE

82.     "The Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a) (1), requires an employer to pay overtime compensation to an hourly worker if the employee can establish individual coverage or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 06-60634- CIV, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs., Inc.,* 448 F.3d 1264, 1265 (11th Cir.2006)). "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or [ ] ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" *Id*. (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phase 'engaged in commerce' is interpreted broadly and liberally." *Id*. (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

83.     At all material times, Defendants have been an enterprise within the meaning of 3(r) of the FLSA. 29 U.S.C. § 203(r).

84.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because they have had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

85.     Specifically, Defendants' employees handled— materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

86.     Defendants advertise on the internet, in multiple states which they advertise together on their website, process credit cards from out-of-state patrons, and communicate via mail, email, and telephone with their clients nationwide.

87.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

88.     At all material times, Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

## WAGE VIOLATIONS

89.     Defendants misclassify Plaintiff and all other matchmakers as independent contractors.

90.     Defendants failed to pay Plaintiff and all other matchmakers properly under the FLSA.

## VI.     FACTS

90.     Plaintiff and Class Members have all been victimized by Defendants' common policy and plan to violate their rights under the FLSA by denying them minimum wage, proper overtime, and other wages they lawfully earned.

91.     Plaintiff, Adriannelly Larue, is a former matchmaker for Defendants in Florida.

92.     Plaintiff worked full-time and on a regular weekly basis for Defendants.

93.     Plaintiff worked for Defendants. From approximately November 2019 until approximately January 2023 as a Matchmaker.

94.     Therefore, Plaintiff has first-hand personal knowledge of the pay violations at Tawkify.

95.     The matchmakers are compensated based on a commission structure determined by the Defendants.

96.     Defendants did not pay the matchmakers compensation for any hours worked at Tawkify.

97.     Defendants illegally classified the matchmakers as independent contractors. However, at all times, the matchmakers were employees of Defendants as that term is defined by the FLSA, and relevant case law.

98.     Defendants hired, fired, and supervised the matchmakers.  Defendants also set the schedule for the matchmakers. Defendants controlled the details of the matchmakers' jobs, including setting the prices to charge customers for services and imposing limitations on how to interact with Tawkify's clients.

99.     Defendants also controlled the matchmakers' appearances with respect to their attire.  *See* Tawkify General Policies February 2022, attached as Exhibit F at pp.6.

100.    Defendants disciplined the matchmakers for not following Tawkify's company rules.

101.    Defendants tracked the time and days the matchmakers worked just as is common for typical employer-employee relationships.

102.    In addition, Defendants instructed the matchmakers about when, where, and how they were to perform their work.

103.    The following further facts demonstrate the matchmakers' status as employees:

    a)    Defendants had the sole right to hire and fire the matchmakers;

    b)    Defendants require matchmakers to complete an employee application as a prerequisite to their employment;

    c)    Defendants made the decision not to pay overtime;

    d)    Defendants made the decision not to compensate at the FLSA minimum wage rate;

    e)    The matchmakers have made no financial investment in the Defendants' business;

    f)    The matchmakers were hired as permanent employees and have worked for Defendants for years;

    g)    Defendants supervised the matchmakers, and

    h)    Defendants picked which clients were assigned for the matchmakers and as such had sole control over their opportunity for profit.

104.    Defendants misclassified Plaintiff and Class Members as independent contractors to avoid their obligations to pay them pursuant to the FLSA.

105.    Plaintiff and Class Members are not exempt from the overtime and minimum wage requirements under the FLSA.

106.    Although Plaintiffs and Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA-mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of the FLSA. *See* 29 U.S.C. § 206.

107.    Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the intent to avoid paying them in accordance with the FLSA.

108.    Further, at all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc*., 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc*., 346 F.3d 908, 914–15 (9th Cir. 2003).

109.    All Defendants have a common business purpose of for-profit online matchmaking services.

110.    The individually named Defendant keeps employment records for Tawkify.

111.    The individually named Defendant has ultimate authority regarding hiring and firing employees at Tawkify.

112.    The individually named Defendant created and implemented a companywide policy of misclassifying Stylists as independent contractors at Tawkify throughout Florida and Nationwide.

## VII.    COUNT ONE: VIOLATION OF 29 U.S.C. § 207

113.    Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

114.    Defendants' practice of failing to pay Plaintiffs and Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA. 29 U.S.C. § 207.

115.    None of the exemptions provided by the FLSA regulating the duty of employers to

pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiffs.

### VIII.   COUNT TWO: VIOLATION OF 29 U.S.C. § 206

116.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

117.    Defendants' practice of failing to pay Plaintiff and Class Members at the required minimum wage rate violates the FLSA. 29 U.S.C. § 206. In fact, Defendants do not compensate the matchmakers whatsoever for any hours worked.

118.    None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendants or Plaintiff.

119.    Defendants failed to keep adequate records of Plaintiff's and Class Members' work hours and pay in violation of section 211(c) of the FLSA. *See* 29 U.S.C. § 211(c).

120.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a)      The time of day and day of week on which the employees' work week begins;

b)      The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c)      An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d)      The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e)      The hours worked each workday and total hours worked each workweek;

f)      The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g)      The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h)      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i)      The dates, amounts, and nature of the items which make up the total additions and deductions;

j)      The total wages paid each day; and

k)      The date of payment

29 C.F.R. 516.2, 516.5.

121.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff and Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiff and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and producing sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*¸ 328 U.S. 680, 687 (1946).

## IX.    COLLECTIVE ACTION ALLEGATIONS

122.    As part of their regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiff and Class Members by engaging in a pattern, practice, or policy of violating the FLSA on a class-wide basis, as described above.

123.    Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on her own behalf and on behalf of:

> All current and former matchmakers who were classified as Independent Contractors by Tawkify and who were not paid full and proper overtime wages for all hours worked in excess of forty (40) hours per workweek, a*t any time in the last three (3) years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

124.    Although Defendants permitted and/or required Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty. Defendants have also denied them full compensation at the federally mandated minimum wage rate.

125.    Class Members perform or have performed the same or similar work as Plaintiff.

126.    In particular, Plaintiff and Class Members all worked as Matchmakers under the same conditions and subject to the same violations of the FLSA.

127.     Many Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

128.     Defendants have classified and upon information and belief, continue to classify Class Members as independent contractors.

129.     Class Members are not exempt from receiving overtime pay and/or minimum wage at the federally mandated minimum wage rate under the FLSA.

130.     As such, Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

131.     Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members.

132.     The experiences of Plaintiff, with respect to her pay, are typical of the experiences of Class Members.

133.     The experiences of Plaintiff, with respect to her job duties, are typical of the experiences of Class Members.

134.     The specific job titles or precise job responsibilities of each Class Member does not prevent collective treatment.

135.     All Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

136.     All Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

137.     Although the exact amount of damages may vary among Class Members, the damages for Class Members can be easily calculated by a formula. The claims of all Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all Class Members.

138.     The Plaintiff and the Class Members held the same job title: Matchmakers.

139.     The Defendants have classified all of its Matchmakers as independent contractors from at least January 2019 through the present.

140.     The individually named Defendant instituted, permitted, and/or required the policy and practice of classifying all Matchmakers at Tawkify as independent contractors.

141.    As such, the class of similarly situated Plaintiffs is properly defined as follows:

## IX.    DAMAGES SOUGHT

142.    Plaintiff and Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated minimum wage rate.

143.    Additionally, Plaintiff and Class Members are entitled to recover their unpaid overtime compensation.

144.    Plaintiff and Class Members are also entitled to all of the misappropriated funds, including all funds that were charged as fees and penalties, out-of-pocket expenses and all unlawful deductions that were taken. Without repayment of such fees, Plaintiff and Class Members will not have been paid minimum wage and overtime in accordance with the FLSA.

145.    Plaintiff and Class members are also entitled to an amount equal to all of their unpaid wages and fees as liquidated damages. 29 U.S.C. § 216(b).

146.    Plaintiff and FLSA Class Members are entitled to recover their attorney's fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

147.    Plaintiff and Class Members also seek pre and post judgment interest, and lump sum for increased tax liability related to any award payment.

## JURY DEMAND

148.    Plaintiff and Class Members hereby demand trial by jury.

## PRAYER

149.    For these reasons, Plaintiff and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

a)    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and her counsel to represent the Class;

b)    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to

29 U.S.C. §216(b) and appointing Plaintiff and their counsel to represent the Collective Action members;

c)       Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

d)       Overtime compensation for all hours worked over forty in a workweek at the applicable time-and-a-half rate;

e)       All unpaid wages at the FLSA mandated minimum wage rate;

f)       All unpaid wage at the Florida mandated minimum wage rate;

g)       All misappropriated funds;

h)       All misappropriated funds that were labeled as fees or otherwise;

i)       An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under the FLSA;

j)       An equal amount of all owed wages and misappropriated funds and tips as liquidated damages as allowed under Article X, Section 24 of the Florida Constitution;

k)       Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

l)       Such other relief to which Plaintiff and Class Members may be entitled, at law or in equity.

Dated this 30th day of August 2023

Respectfully submitted,

*/s/ Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No.: 0085476
RICHARD CELLER LEGAL, P.A.
10368 W. State Road 84, Suite 103
Davie, FL 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail: noah@floridaovertimelawyer.com

*Trial Counsel for Plaintiff*